IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

BUSINESS LOGISTICS GROUP,
INC., a New Mexico corporation, and
JULIE BORGES, an individual,

    Plaintiffs,

vs.                                                                             Civ. No. 08-375 RLP/RHS

SIMPLEFY, INC., a Nevada
Corporation; ANTHONY BOWMAN,
an Individual and DOES I through 10,

    Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANTS MOTION TO DISMISS
PURSUANT TO F.R.CIV.P. 12(b) (2)**

       This matter is before the court on the motion of Defendants to dismiss Plaintiffs' Complaint, or in the alternative, to Transfer Venue to the District of Nevada [Docket No. 20].

       Defendants contend that they lack the minimum contacts necessary with the State of New Mexico to allow this court to assert personal jurisdiction over them. Plaintiffs contend in opposition that Defendants have sufficient contacts with New Mexico based upon operation of a web site available to New Mexico residents, and because Defendants' knew or should have known that their allegedly tortious actions would injure Plaintiff *Business Logistics Group, Inc. ("BLG"* herein*)*, an entity incorporated in the State of New Mexico.

       For the following reasons, the court **GRANTS** Defendants' Motion to Dismiss pursuant to F.R.Civ.P. 12(b)(2).

I.    Jurisdiction

       I have subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question), 1338(a) (trademarks), 1367(a) (supplemental jurisdiction) and 15 U.S.C.§1121 (Lanham Act). Plaintiffs

assert federal and state law claims against Defendants based on alleged unfair competition (15 U.S.C. §1125(a)), trademark infringement (Lanham Act, 15 U.S.C. § 1114(a); common law), and intentional interference with prospective economic advantage. These claims center around the ownership of and rights to the use of a domain name (Simplefy.com), website (www.simplefy.com), and trademark (Simplefy).

II.     Background

Plaintiff *Borges* [*Borges* herein] resides in and does business in Las Vegas, Nevada. She alleges that she is the owner of the Simplefy mark, with rights to its exclusive use in connection with credit card payment processing, electronic commerce payment services and other financial applications. *BLG* is a New Mexico Corporation. Although not alleged in the Complaint, in an affidavit, *Borges* asserts that she allowed *BLG* to use the Simplefy mark and "Simplefy.com"pursuant to a 2002 licencing agreement. It is assumed that the asserted right to the benefits of this licencing agreement forms the basis of *BLG's* claims in this lawsuit.

Defendant *Simplefy, Inc*. is a Nevada corporation. Defendant *Bowman* [*Bowman* herein] is a California resident, who served for a time as *BLG's* president, as a member of the *BLG* Board of Directors, and who has served as president of *Simplefy, Inc*. since its formation on December 29, 2005.

On Oct. 18, 2008, *Borges* filed suit in Nevada state district court against Bowman and four other individuals[1] on behalf of *Simplefy, Inc*. This litigation involved, among other issues, property rights *Borges* claims regarding the use of the Simplefy service mark. On Oct. 19, 2009, *Bowman* filed suit in Nevada state district court on behalf of *Simplefy, Inc*., against *Borges* and three other

---

[1] Doc. No. 21, Bowman Affidavit (Ex. 1), Ex. A; Docket No. 27, Borges affidavit  Ex. 2, ¶ X.

individuals.[2]   In December 2008, *Borges* filed a Complaint in Intervention[3] alleging virtually the same causes of action alleged in the instant suit[4]: trademark infringement related to use of the Simplefy mark and simplefy.com web site, seeking recovery pursuant to the Lanham Act, 15 U.S.C. §1114(a), Nevada statutes and the common law, unfair competition under 15 U.S.C. §1125(a) and California and Nevada statutory law and intentional interference with prospective economic advantage.  The Nevada suits have been consolidated and are being actively litigated.  Although *BLG* is not a party the Nevada litigation, the District Court, Clark County, Nevada, entered a Preliminary Injunction Order on March 14, 2008, ruling, in part, that the licensing agreement between *Borges* and *BLG* was not binding on *Simplefy, Inc.*  (Docket No. 21, Ex. E, p. 2).

III.    Legal Standard Governing a Rule 12(b)(2) Motion

Federal Rule of Civil Procedure 12(b)(2) authorizes dismissal of a complaint for lack of personal jurisdiction.  A motion brought pursuant to Rule 12(b)(2) tests the plaintiff's theory of jurisdiction and the facts supporting the jurisdictional theory.  Credit Lyonnais Securities. (USA) Inc., v. Alcantara, 183 F.3d 151, 153-154 (2nd Cir. 1999).  Where a defendant challenges the exercise of personal jurisdiction, the plaintiff has the burden of establishing that personal jurisdiction exists, and that the exercise of personal jurisdiction would not violate due process requirements.  Rambo v. Am. S. Ins. Co., 839 F.2d 1415, 1417 (10th Cir. 1988).

As no evidentiary hearing has been conducted

(The court will) take as true all well-pled (that is plausible, nonconclusory, and non-

---

[2] Doc. No.21, Bowman Affidavit, (Ex. 1), ¶7.

[3] Doc. No. 21, Bowman Affidavit (Ex. 1), Ex. C.

[4]The causes of action alleged differ to the extent on in that California and Nevada statutory and/or common law, rather than New Mexico common law is cited.

> speculative) facts alleged in the complaint. Dudnikov, 514 F.3d at 1070) (citing Bell Atl. Corp. v. Twombly. – U.S. –, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007). However, any factual disputes in the parties' affidavits must be resolved in the plaintiff's favor. Dudnikov, 514 F.3d at 1070 (citing FDIC v. Oaklawn Apartments, 959 F.2d 170, 174 (10th Cir. 1992). . . (T)he plaintiff need only make a *prima facia* showing of personal jurisdiction. Dudnikov, 514 F.2d at 1070 (citing Wenz v. Memery Crystal, 55 F.3d 1503, 1505 (10th Cir. 1995).

APA Dana Oriental Rug Gallery, Inc., v. Raisdana, Slip Copy, 2008 WL 833476, *4 (D. Kan.,2008). "The plaintiff has the duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts if those allegations are challenged by an appropriate pleading." Wenz v. Memery Crystal, 55 F.3d 1503, 1508 (10th Cir. 1995), quoting Pytlik v. Professional Resources, Ltd., 887 F.2d 1371, 1376 (10th Cir.1989), see also Ten Mile Indus. Park v. Western Plains Serv. Corp., 810 F.2d 1518, 1524 (10th Cir.1987) (providing that only the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true).

IV.     The New Mexico Long-Arm Statute and Minimum Contacts

To obtain personal jurisdiction over the nonresident Defendants, Plaintiff must show that jurisdiction is legitimate under the laws of the New Mexico and that the exercise of jurisdiction does not offend the Due Process Clause of the Fourteenth Amendment. Far W. Capital, Inc. v. Towne, 46 F.3d 1071, 1074 (10th Cir.1995) (discussing analysis of personal jurisdiction in diversity cases); Daugherty v. United States, 212 F.Supp.2d 1279, 1296 (N.D.Okla.2002) (discussing analysis of personal jurisdiction when a court's subject matter jurisdiction is based on a federal statute that does not authorize nationwide service of process). The Due Process Clause protects a defendant from being subjected to the judgment of a forum with which "he (or it) has established no meaningful 'contacts, ties or relations.'" Burger King Corporation v. Rudzewicz, 471 U.S. 462, 471-72, 105 S.Ct. 2174, 2181, 85 L.Ed. 2d 528 (1985).

New Mexico law provides for *in personam* jurisdiction over nonresident defendants,

provided the defendants have committed one of the acts enumerated in the long arm statute NMSA 1978 §38-1-16(A)[5], the cause of action arises from those acts, and the defendants have sufficient minimum contacts with this state sufficient to satisfy the requirements of constitutional due process. Beh v. Ostergard, , 657 F.Supp. 173, 174 (D, N.M. 1987); Sanchez v. Church of Scientology of Orange County, 115 N.M. 660, 663, 857 P.2d 771, 773 (1993).

New Mexico's long-arm statute extends jurisdiction to constitutional limits. United Nuclear Corp. v. General Atomic Co., 91 NM 41, 42, 570 P.2d 305, 306 (1977). Therefore, the inquiry proceeds directly to the constitutional issue of "whether the defendant purposely established 'minimum contacts' in the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. at 474.

V.     General and Specific Jurisdiction

There are two methods by which the minimum contacts test can be met, through general or specific jurisdiction. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed. 2d 404 (1984); Trierweiler v. Coxton & Trench Holding Corp., 90 F.3d 1523, 1532-1533 (10th Cir. 1996). General jurisdiction exists when a defendant has other "continuous and systematic" contacts with the forum, even if those contacts are not related to the pending litigation. Helicopteros Nacionales de Colombia, S.A. v. Hall, 104 S.Ct. at 1872; Trierweiler v. Coxton & Trench Holding Corp., 90 F.3d at 1533; Intercon v. Bell Atlantic Internet

---

[5]The New Mexico Long-arm statute provides in relevant part:

Any person . . . who in person or through an agent does any of the acts enumerated in this subsection thereby submits himself or his personal representative to the jurisdiction of the courts of this state as to any cause of action arising from:

(1)     the transaction of any business within this state; [or]
                                  ***
(3)     the commission of a tortious act within this state [.]

NMSA 1978 §38-1-16(A).

Solutions, Inc., 205 F.3d 1244, 1247 (10th Cir. 2000) ("When a plaintiff's cause of action does not arise directly from a defendant's forum-related activities, the court may nonetheless maintain general personal jurisdiction over the defendant based on the defendant's business contacts with the forum state."). Specific jurisdiction exists over a defendant "if the defendant has 'purposefully directed' his [or it's] activities as residents of the forum (citation omitted), and the litigation results from alleged injuries that 'arise out of or relate to those activities.'" Burger King Corp. v. Rudzewicz, 471U.S. at 472; Kuenzle v. HTM Sports-Und Freizeitgeräte AG, 102 F.3d 453, 455 (10th Cir. 1996). Specific personal jurisdiction may be established in a number of ways, including consideration whether the defendant has availed himself of privilege of conducting business in the state, Burger King, 471 U.S. at 472-473, or has "invok[ed] the benefits and protections of its laws. " Id., at 474-475.

If minimum contacts exists, the court must also determine whether the exercise of personal jurisdiction over the non-resident defendant would comport with fair play and substantial justice, Id. at 476, that is, whether assuming personal jurisdiction over the defendant is reasonable in light of the circumstances surrounding the case. OMI Holdings, Inc., v. Royal Insurance Co. of Canada, 149 F.3d 1086, 1091 (10th Cir. 1998).

VI.   Factual background

The following facts are not disputed.

*Simplefy, Inc*., is an Nevada corporation. It has no offices in New Mexico, has never had a New Mexico bank account, and has never owned property in New Mexico. *Simplefy, Inc*. has never held board meetings in New Mexico. All of its board meetings have occurred in Nevada, or over the telephone. None of its sales agents reside in New Mexico. *Simplefy, Inc*. has never attended any trade shows in New Mexico, or directed any unsolicited mailings or cold calls to New

Mexico persons or entities.  *Simplefy Inc,'s* former CFO resides in New Mexico, as do two of its shareholders, one of whom is the former CFO.  The majority of *Simplefy Inc.'s* approximately 400 customers are located in California, Nevada and New York.  *Simplefy Inc*. has three current clients in New Mexico, the revenue from whom composes less than 0.01% of its net monthly income. *Simplefy, Inc.*, receives no direct payment from its New Mexico clients.  All billing to these clients, and all clients, is done through a third party, First Data, which originates the payment invoices in Hagerstown, Maryland.  *Bowman* is a resident of Moorpark, California.  He has never lived in, traveled to or visited New Mexico, and owns no property in New Mexico.  All of his communications with persons in New Mexico were in his capacity as president of *BLG*, and subsequently, president of *Simplefy, Inc*.  Between 2003 and March of 2008, *Bowman* communicated with *BLG's* CFO once or twice a month electronically or by telephone.  *Bowman* spoke by telephone with *BLG's* CFO three time after October 2007.   The *BLG* CFO frequently traveled to Nevada to fulfill his corporate duties.

The following facts are asserted in affidavits presented by Plaintiffs.

*BLG* has always  maintained its books, records and bank accounts in New Mexico.  In  April 2008, a change of address notification was sent to *BLG* at its New Mexico address, notifying it that account No. XXXX10209[6] had been moved to a  Moorpark, California address.[7]  Since this time, *BLG* has not had access to this account.

---

[6]According to Docket No. 27, Ex. 10, the account had a February 29, 2008 opening balance of $298.46, and a March 31, 2008 closing balance of $423.73.   The only activity in the account for that month, apart from service fees and charges, related to "Simplefy" transactions.

[7]Plaintiffs also state in the affidavit of Kevin Treider (Docket No. 27, Ex. 3), that the signators on the account were changed, removing BLG principals, and replacing them with Bowman and  Patrick Dancy.  These statements, however, are hearsay, and therefore are not  considered.

The following facts are asserted in an affidavit presented by Defendants, and have not been disputed by Plaintiffs:

In process of setting up a bank account for *Simplefy, Inc.*, at a Wells Fargo Bank in Moorpark, California, Bowman sought to have monies from the *BLG* account transferred to a new Simplefy account, representing that the monies belonged to a *Simplefy, Inc.* customer, and had been improperly deposited into the *BLG* account. In support of this action, Bowman provided the banker with a copy of a Preliminary Injunction Order from Nevada State District Court, Clark County, as well as corporate minutes and resolutions permitting Bowman to open and close bank accounts for *Simplefy, Inc.*[8]

## VII. Discussion

Plaintiffs specifically rely upon the web site operated by *Simplefy, Inc.* as grounds for exerting personal jurisdiction over Defendants.[9] Three pages from the web site which have been provided to the court[10] demonstrate that potential clients can communicate with *Simplefy, Inc.'s* host computer, relaying contact information, comments or questions, and business requirements. The web site states that after receipt of this information, the potential client will be contacted by a representative within 24 hours. No products or services are sold through the web site. The website has no paying subscribers or other method of enrollment. *Simplefy, Inc.*, has received no web-generated inquiries from any person or companies located in New Mexico, and the web site has generated no business in New Mexico. Defendants describe *Simplefy, Inc.'s* web site as "passive,"

---

[8] A copy of the Preliminary Injunction Order, filed of record March 14, 2008, is attached to Docket No. 21, Ex. E. Copies of the Minutes and Resolution are attached to Docket No. 27, Ex.9.

[9] Docket No. 3, ¶ 3.

[10] Ex. A,B,C to Affidavit of *Bowman*, Ex. 1 to Docket No. 20.

8

while Plaintiffs contend it is an active solicitation form.

General jurisdiction requires a "more stringent minimum contacts test...." Benton v. Cameco Corp., 375 F.3d 1070, 1080 (10th Cir.2004) (quoting OMI Holdings, 149 F.3d at 1091); see also Schneider v. Cate, 405 F.Supp.2d 1254, 1260 (D.Colo.2005) (citing Trierweiler, 90 F.3d at 1543) ("The threshold of contacts necessary to support general jurisdiction is high."). While "[t]here is no bright line rule to determine what constitutes 'systematic and continuous contacts,' . . . courts have considered, *inter alia*, 'the frequency of defendant's travel to the forum state, frequency and amount of work a defendant performed in the forum state, and whether a defendant owned property in the forum state.'" Highline Capital Corp. v. Ahdoot, Slip Copy, 2008 WL 486020, *7 (D.Colo.,2008), quoting Int'l Beauty Prods., LLC v. Beveridge, 402 F.Supp.2d 1261, 1272 (D.Colo.2005). Other factors considered include whether the corporation solicits business in the state through a local office or agents; whether the corporation sends agents into the state on a regular basis to solicit business; the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings or bank accounts; and the volume of business conducted in the state by the corporation. Trierweiler v. Coxton & Trench Holding Corp., 90 F.3d at 1533, citing 4 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1069, at 348-355 (collecting cases) (2d ed.1987); Capitol Fed. Savings Bank v. Eastern Bank Corp., 493 F.Supp. 2d 1150, 1164-1165 (D. Kan. 2007).

The "non-internet" contacts between Defendants and New Mexico do not constitute continuous and systematic contact with New Mexico, and are therefore insufficient to meet the minimum contacts requirements for the exercise of general jurisdiction.

The extent to which general jurisdiction can be established by *Simplefy, Inc's* internet presence depends on the degree to which its web site is used to conduct or solicit business within

9

the New Mexico. See Soma Med. Int'l v. Std. Chartered Bank, 196 F.3d 1292, 1296 (10th Cir.1999). Whether maintenance of a web site accessible by a state's residents will confer general jurisdiction is assessed on a sliding scale. Jurisdiction is established when a defendant "clearly does business over the internet" by entering into contracts that require "knowing and repeated transmission of computer files over the internet." Id., quoting Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F.Supp. 1119, 1123-24 (W.D.Pa.1997) (additional quotations omitted). Jurisdiction is absent when the web site merely makes information available to those who are interested, but does not permit communication between the host computer and the web site user. Id. Between these extremes is a middle ground, where the web site permits a user to exchange information with the host computer. Id. That is the situation before this court. In cases falling in this middle ground, "whether the exercise of jurisdiction is appropriate depends upon 'the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.' " Id.

The maintenance of this web site is insufficient to constitute minimum contacts for general jurisdiction purposes. The level of interactivity of this web site is quite low, and serves only as a repository for inquiries, rather than a means to conduct business. In addition, it has generated no inquiries from New Mexico residents. See Xactware, Inc., v. Symbility Solutions Inc., 402 F. Supp. 2d 1359, 1363-1364 (D. Utah 2005) (Interactive web site available to but unused by Utah residents insufficient to demonstrate that defendant intentionally targeted Utah residents); see Campbell Pet Co. v. Miale, 542 F.3d 879, 882 (9th Cir. 2008) (website not specifically directed to Washington residents, which did not generate any sales in Washington, insufficient to establish general jurisdiction by State of Washington).

Accordingly, neither *Simplefy, Inc*., nor *Bowman* have the type of continuous and systematic contacts with New Mexico necessary to sustain general personal jurisdiction over them in this

district.

The issue, then, boils down to whether specific jurisdiction over *Simpley, Inc.,* and/or *Bowman* is proper in this case. In the context of an action such as this, based on intentional tort, minimum contacts amounting to purposeful direction require "(a) an intentional action . . .(b) expressly aimed at the forum state . . . with [c] knowledge that the brunt of the injury would be felt in the forum state." Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d, 1063, 1072; citing Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed. 2d 804 (1984). In addition,

> Specific jurisdiction . . . is premised on something of a *quid pro quo*: in exchange for "benefitting" from some purposive conduct directed at the forum state, a party is deemed to consent of the exercise of jurisdiction for claims related to those contacts. (emphasis added).

Dudnikov 514 F.3d at 1078.

To establish minimum contacts in New Mexico, Plaintiffs allege that Defendants "committed tortious acts within New Mexico, expecting the injury to *BLG* to occur within New Mexico."[11] Plaintiffs' contend (1) that Defendants wrongfully gained control of the *BLG* bank account located in New Mexico although allegations related to this bank account are not part of Plaintiffs' Complaint[12] and (2) that *BLG's* status as a New Mexico corporation, and the harm experienced by it and its shareholders in New Mexico, renders Defendants' use of the Simplefy trademark a sufficient minimum contact to support personal jurisdiction. The court will consider these allegations in turn.

Defendants actions *vis a vis* the *BLG* Wells Fargo bank account were certainly "purposive,"

---

[11] Docket No. 27, p. 8.

[12] Docket No. 27, p. 7. Plaintiffs state that they intend to amend their Complaint to add a claim related to the removal of funds from the Wells Fargo account, but have taken no steps to do so.

to the extent their purpose was to have monies transferred from the *BLG* account to a *Simplefy* account.[13]   However, the allegations concerning the bank account are not part of the Complaint. Accordingly, Defendants' actions related to that bank account do not support the exercise of specific jurisdiction.

As to the harm suffered by *BLG* from the causes of action which are alleged, the Tenth Circuit held that the mere allegation that an out-of state defendant tortiously interferes with contractual rights or commits other business torts that allegedly injure a forum resident "does not necessarily establish that the defendant possesses the constitutionally required minimum contacts" such that the court has personal jurisdiction over that defendant.  Far West Capital, Inc., 46 F.3d 1071, 1079.  Rather, the forum state itself must be the "focal point of the tort."  Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d at 1075.  Here, however, accepting that Defendants' use of the Simplefy trademark, domain name and website are intentional torts, New Mexico is not the focus of those actions.  Crediting Plaintiffs' undisputed allegations and affidavit evidence, the owner of the trademark is *Borges,* a Nevada resident, not *BLG*.  Therefore, it can not be said that Defendants' conduct was "expressly aimed" at New Mexico.

Although this disposition resolves this case, it may be useful for the parties to know that, even if the motion to dismiss had been denied, the court would have very seriously considered transferring this case to Nevada on grounds of *forum non conveniens*. Clearly all of the decisions surrounding the dispute between the parties took place in Nevada or California, not in New Mexico.

**IT IS HEREBY ORDERED THAT** Defendants' Motion to Dismiss for Lack of Personal

---

[13]Bowman contends that he did not know where the *BLG* bank account was physically located in New Mexico.  However, Plaintiffs have presented evidence that *BLG's* accounts have always been in New Mexico.   The court assumes that as former president and director of *BLG*, Bowman would have been on notice of *BLG's* prior banking relationships.

Jurisdiction [Docket No. 20] is **GRANTED,** and this action is **DISMISSED** without prejudice.

_____
Richard L. Puglisi
United States Magistrate Judge
(Sitting by designation)